## White, &c., vs. Monsarrat, &c.

Case 48.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

PET. EQ.

1. The fact that a deed of trust gives to the trustee "full right and authority to collect and sue for and settle and compromise all debts due to the assignor, or owing by him," does not show the deed to be fraudulent.

2. A trustee acting unfaithfully in compromising debts due to the debtor, will be responsible to the beneficiaries in the deed.

3. The power to compromise debts due to the debtor does not authorize the payment of debts in a different order from that prescribed by the deed of trust.

4. The right of the trustee to compromise with the debtors of the maker of the deed of trust, cannot have the effect of compelling a creditor to take less than is due to him, if the assets are sufficient to pay all.

[The facts of the case appear in the opinion of the court. REP.]

*Bullitt & Smith,* for appellants—

This petition was filed by White and others to vacate and set aside a deed of trust made by Monsarrat to Mitchell and Harrison, for the payment of the debts of Monsarrat, on the ground that there was fraud in fact in making the assignment.

The defendants answered, only one of them swearing to the answer, to-wit: Harrison. Though required to answer, and set out the amount of assets which has come to their hands, they have failed to do so. The case was referred to a commissioner to ascertain and report the amount of assets in the hands of the trustees, who has never been able to ascertain any thing from the trustees.

Mitchell, one of the trustees, has sued Monsarrat and the other trustee, which is strong proof that he regards the conveyance as fraudulent. (See record.) He states that the assets fell short, while the debts far exceed the statement in the deed of trust, and that at the time of the assignment Monsarrat gave verbal assurances that the assets were amply sufficient to pay the debts. According to the deed, the assets were worth over $111,000. According to Mitchell's exhibit, they are worth less than $34,000. Of pretended assets, $51,000 are fictitious, consisting of pretended claims to land. The assets are insufficient to pay one third of his debts, yet the deed contains a stipulation for a return of the surplus. It is clear Monsarrat intended to deceive his creditors as to the value of his assets; and it seems highly probable that he retained in his pocket $51,000 of assets

in lieu of the fictitious assets set out in the schedule. He made a fair show to delay investigation, and gave time to cover up his tracks; and in this we believe he has succeeded. The foregoing facts are relied upon as sufficient to show the deed fraudulent.

Is it not clear that the trustees are authorized to effect the compounding of debts due by Monsarrat? That it was so understood by the trustees, is proved by the fact that they failed to deny an allegation to that point made in the amended petition. Again, the deed contains a provision concerning the adjustment of claims on Monsarrat. The power to *compromise* a debt, necessarily includes the power to *compound*, which power is given to the trustees, and making partial payments and obtaining releases, &c. In other words, gives the power to the trustees to change the order of preferences, instead of distributing the assets *pro rata* according to classification, and is therefore fraudulent and void. (*Hudson & Co. vs. Mayes & Co.* 3 *Scammon Ill. Rep.* 578; *Gazzam vs. Poyntz*, 4 *Ala. Rep.* 384; *Wakeman vs. Grover*, 4 *Paige*;) which has been approved in 11 *Wendell*, 189; *Barnam vs. Hemsted*, 7 *Paige*, 223; *Sheldon vs. Dodge*, 4 *Denio*, 217; *Strong vs. Skinner & Co.* 4 *Barbour S. C. R.* 546; *Averill vs. Locke*, 6 *Ib.* 470.

In *Pierson & Anderson vs. Rockhill, &c.* 4 *B. Mon.* 296, the power was to compound debts due to the assignor. And in *Ely, Clapp, &c. vs. Hair, Nugent, &c.* 16 *Ib.* 232, the court seem to recognize the doctrine for which we contend.

2. The deed is fraudulent on its face. After dividing the creditors into classes, and directing their payment in the order of their classification, it contains this provision: "It is hereby directed that the 'trustees aforesaid shall have the full right and au- 'thority to collect and sue for, and settle and compro- 'mise all debts due to said Monsarrat or owing by 'him." The power given to compromise debts due to Monsarrat, is a power to take less than the amounts due to him, which is a power to compound

WHITE, &c.
vs.
MONSARRAT,&c.

to the prejudice of creditors. (11 *Wendell*, 187; 5 *Ala. Rep.* 374; 16 *B. Monroe*, 239.)

The chancellor utterly ignored our authorities as well as the principles which they asserted.

It is well settled that an assignment in trust to pay such creditors as will release their demands, reserving the surplus to the debtor, either expressly or impliedly, is fraudulent. (*Smith, Murphey & Co. vs. Gardner & Co. MSS. opinion.*)

*Pirtle & Ballard*, for appellees.

This deed of assignment for the payment of debts is attacked, because it gives power to compromise. (See this part of the deed, commencing at page 24.) We suppose this does not increase the power of the assignee, or in any degree change the legal result; but that without any mention of the power to compromise, he would have been able, by his very position as trustee for creditors, to do this amicable and beneficial act. How it is harmful when mentioned in the deed, we cannot understand. It does not change the order of payment, as in the case of *Gazzam vs. Poyntz*, 4 *Ala. Rep.* 374; and if it did, the change would be, not by the mere will of the trustee, but of the grantor in the exercise of his full dominion over his property, while he devotes it all to the payment of honest debts. It does not give power to *compound* " on such terms as he shall deem proper," as was given in the deed disapproved by the supreme court of New York, in the case of *Grover vs. Wakeman*, 11 *Wend. Rep.* 189, 208. " *Compromise*" does not mean compound. To compound, implies the acknowledgment of an indebtedness of a certain amount, and the payment of a less amount in discharge thereof: To compromise, implies the settlement of a dispute in neighborly fashion.

But the counsel for the appellants say, that to give power to compound is illegal, and compromise may mean compound, therefore it shall be taken that a power was intended to be given which the party

could not give, and the deed is void! Now, surely if "to compromise" may mean something other than compound, and to do this is lawful, it is fair to construe the meaning of the party in the lawful sense. But this word does not mean compound.

This court, in the case of *Pearson & Anderson vs. Rockhill & Co.* 4 *B. Mon.* 296, held a deed with preferences to be good, which contained the power to *compound*. This court has not followed the courts in New York and Alabama in many respects, with regard to these deeds of assignment for the benefit of creditors. (See the manuscript opinion in the case of *Brady & Davis vs. Holbert & Hall*, Jan. 1852; *Ely, Clapp & Co. vs. Hare & Nugent*, 16 *B. Mon.* 230.)

If this were a power to compound, and were objectionable, it would not destroy the deed. No creditor is bound to compound or to compromise. The objection in one of the cases cited, is, that the creditor might be driven into a court of equity, and thereby delayed, if he did not compound. This is far fetched. But with us the court of equity is given charge of all such assignments, and therefore this objection fails. (*Belknap vs. Olmstead, manuscript.*)

But if the clause were objectionable, it should itself be deemed void, and the rest of the deed should stand. This has been the course of this court in other instances where the deed was void as to certain things; as where, for instance, a pretended indebtment was put in the deed, and its payment provided for. (*Ames vs. Bliss.*)

Chief Justice WHEAT delivered the opinion of the court.       Feb. 3, 1858.

Monsarrat conveyed all of his estate to Joseph Mitchell and Oliver I. Harrison, in trust for the benefit of his creditors.

The appellants brought an action in the Louisville chancery court against Monsarrat and the trustees, to vacate and set aside the deed on the alleged ground that it was made and contrived to defraud the creditors of Monsarrat & Monsarrat & Co.

WHITE, &c.
vs.
MONSARRAT, &c.

Upon hearing, the Louisville chancery court, being of opinion, that the appellees had failed to make out their case, dismissed their petition so far as it sought to set aside the deed, and they have appealed to this court.

It is now insisted that the judgment of the court below ought to be reversed—because: 1st. Actual fraud is shown by the facts and circumstances proved in the cause; and 2d. Because the deed is fraudulent upon its face.

Upon the first ground, we deem it sufficient to remark, that the evidence of actual fraud is so slight as not calculated to raise anything more than a suspicion as to the fairness of the conveyance and the intent upon which it was executed. Indeed, the appellants counsel have not insisted with much earnestness that actual fraud is made out against the grantor and grantees in the deed.

But upon the second ground, it is insisted with some zeal, that the deed is fraudulent upon its face. In support of that position, these words in the deed are relied upon: "The trustees aforesaid shall have the ' full right and authority to collect and sue for, and ' settle, and compromise, all debts due to said Mon- ' sarrat, *or owing by him.*"

It is admitted by the learned counsel for the appellants that the power given in the deed to compromise debts due to Monsarrat does not invalidate it.

We are not able to perceive why a power given to compromise a debt due to Monsarrat might not be as prejudicial to his creditors as the power to compromise a debt owing by him.

A power to compromise with any one of his creditors does not necessarily carry with it the right or the power, under the deed in question, to pay any debt in a deferred class before paying one in a preferred class. Under this deed the trustees bind themselves to Monsarrat and the *cestui que's trusts*, for the faithful execution of the trusts imposed by

1. The fact that a deed of trust gives to the trustee "full right and authority to collect and sue for, and settle and compromise all debts due to the assignor, or owing by him," does not show the deed to be fraudulent.

2. A trustee acting unfaithfully in compromising debts due to the debtor, will be responsible to the beneficiaries in the deed.

the deed, and they would be held responsible under their covenant for any injury to any creditor who might be damaged by an unfaithful discharge of their duties as trustees.

Although the words compromise and compound are often used interchangeably in legal parlance, yet, the grant of the power in a deed of trust to compromise with the creditors of an insolvent debtor, does not impart a right to pay debts in any order different from that prescribed in the deed.

The *subject* of a compromise must be something uncertain, for if it be certain, the payment of a part will not discharge the rest for want of consideration. (*Bouvier's Institutes, page* 309.)

How the right to compromise can have any influence in forcing one of Monsarrat's creditors to take less than is due to them so far as the trust property is sufficient to pay them, we are at a loss to comprehend. Nothing is easier than for them to get their shares; nothing more natural than for them to insist upon getting all they are entitled to.

Without going into an examination of the authorities cited, we content ourselves with remarking that the reasoning of the courts, in the cases cited by appellants counsel, where they have held that the power to a trustee, in a deed of trust, to compromise debts owing by the grantor in the deed, renders the conveyances fraudulent, does not strike our minds with much force, and is not at all satisfactory as establishing any such conclusion.

This court has never concurred with the courts of several of the states of this union, in much of their reasoning upon the subjects of conveyances in trust for the benefit of creditors. On the contrary, this court has never gone any unreasonable length to set aside assignments upon fanciful or overstrained presumptions of fraud, but have adopted the more rational course of requiring evidence sufficient to satisfy the mind that there was actual fraud, or constructive fraud, when the law clearly made it such.

WHITE, &c.
*vs.*
MONSARRAT,&c.

3. The power to compromise debts due to the debtor, does not authorize the paym't of debts in a different order from that prescribed by the deed of trust

4. The right of the trustee to compromise with the debtors of the maker of the deed of trust cannot have the effect of compelling a creditor to take less than is due to him, if the assets are sufficient to pay all.

We cannot acknowledge the binding force and authority of the cases referred to, and cited by appellants counsel.

The views and reasoning of the chancellor in the court below, is to our minds, much more satisfactory, and we adopt and approve that reasoning so far as it legitimately leads to the same conclusion to which we have come. Concurring as we do, with the court below, in the conclusion, that the appellants have failed to show that the deed in question is fraudulent, the judgment of said court is affirmed.